UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EVELLIS McGEE,

                        Petitioner,                    Case No. 2:17-cv-13017
                                                          Hon. Arthur J. Tarnow

v.

THOMAS WINN,

                        Respondent.
_____/

**OPINION AND ORDER DENYING (1) PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

      Michigan prisoner Evellis McGee filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Saginaw Circuit Court of second-degree murder, MICH. COMP. LAWS § 750.317, carrying a firearm with unlawful intent, MICH. COMP. LAWS § 750.226, assault with the intent to commit murder, MICH. COMP. LAWS § 750.83, and three counts of possession of a firearm when committing a felony (felony-firearm). MICH. COMP. LAWS § 750.227b. Petitioner was sentenced to concurrent prison terms of 36-to-60 years for the murder and assault convictions, 3-to-5 years for the carrying a firearm conviction, and consecutive 2-year terms for the felony-firearm convictions.

      The petition raises five claims: (1) insufficient evidence was presented at trial to sustain Petitioner's convictions, (2) the jury's verdict went against the great weight of the evidence, (3) Petitioner's trial was improperly joined with his co-defendants, (4) the trial

court erred in admitting gang evidence, and (5) the trial court erroneously instructed the jury on aiding and abetting and mutual combatants.

The Court will deny the petition because the claims are without merit. The Court will also deny Petitioner a certificate of appealability, but it will grant him permission to proceed on appeal in forma pauperis.

## I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> These cases arise out of a May 23, 2013 shooting that occurred shortly before 6:00 p.m. in the parking lot of Saginaw's Florence Event Hall, where Saginaw High School students had gathered with friends and family for an informal pre-prom party. The prosecution theorized that animosity between those associated with Sheridan Park neighborhood and those associated with Saginaw's east side precipitated the shooting. Evidence indicated that defendants Thomas and McGee were from the east side, while defendant Clark, Keon Bowens, a fourth defendant who was acquitted of all charges, and Anterio Patton, the presumed target of the shooting, were from Sheridan Park.
>
> Pamela Jordan reported that, shortly before the shooting began, Thomas, McGee, and several other young men approached Patton, Clark, Bowens, and others gathered around the black Caprice that Patton had driven to the pre-prom party. The witness recounted that Thomas's group approached Patton's group as if "they were wanting trouble." After she had taken a picture of Patton and his date and was walking away, she heard someone from Thomas's group said to someone in Patton's group, "I heard you was looking for me. I got nine rounds for you." Malik Jordan testified that the men by the Caprice were flashing weapons and gang signs, while Trenika Shivers, Patton's aunt, said she saw McGee standing beside Thomas, and saw Thomas flash his gun. Shivers opined that Thomas's was not an aggressive move, nor

was it much noticed by Patton's group. According to Malik, Thomas pulled his gun, held it by his side, and started to back up. Shaquana Reid indicated that McGee was at Thomas's side, acting as if he were about to draw his gun.

Several witnesses testified to a sense that something was going to happen. Tangela Owens said she was walking around taking pictures when her daughter, Tonquinisha "Ne-Ne" McKinley, approached her and told her they had to leave because something was "getting ready to go down." Pamela Jordan said that, just after she heard the threatening words spoken toward Patton's group, her son, Malik, approached her and said, "mom, it's about to be some stuff," and

began pushing her along, away from the area where the black Caprice was parked. Trenika Shivers said she sensed there was about to be a fight and started to get in the Caprice to drive it out of the way when defendant Clark pushed her all the way in the car and said, "ma, get out the way." According to Malik Jordan, after Thomas pulled his weapon, held it by his side, and started backing up, defendant Clark emerged from the Caprice and started shooting. Marguerie Johnson recalled that she was standing by defendants Thomas and McGee when the shooting started, and she saw them shooting back in the direction of Patton and defendant Clark. Several witnesses said that it sounded like shots were coming from everywhere. A firearms expert from the Michigan State Police testified that police recovered 36 cartridge casings fired from five semiautomatic weapons. Ne-Ne McKinley was fatally shot in the face, while three other innocent bystanders were wounded.

*People v. McGee*, 2016 WL 4645822, at *1–2 (Mich. Ct. App. Sept. 6, 2016).

Following his conviction and sentence, Petitioner filed an appeal of right. His appellate counsel filed a brief on appeal that raised the following six claims:

I. Whether Defendant-Appellant is entitled to entry of a judgment of acquittal on all charges?

II. Whether Defendant-Appellant is entitled to a new trial as a verdict was against the great weight of the evidence?

III. Whether Defendant-Appellant was denied a fair trial where he was required to be tried not only in the same trial, but by the same jury, with other defendants that had antagonistic defenses?

IV. Whether Defendant-Appellant was denied a fair trial by the introduction of irrelevant and prejudicial exhibits then invading the province of the jury when asking witnesses what they see in the exhibits?

V. Whether Defendant-Appellant was denied a fair trial when the court improperly instructed the jury, including instructions on aiding and abetting, and mutual combatants?

VI. Whether Defendant-Appellant is entitled to be resentenced, have his judgment of sentence and presentence report corrected?

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Id.*

Petitioner did not file an application for leave to appeal in the Michigan Supreme. See Dkt. 8-24 (Affidavit of Michigan Supreme Court Clerk).

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III. Discussion

A. Procedural Default

Respondent contends that all of Petitioner's claims are procedurally defaulted because of his failure to file an application for leave to appeal in the Michigan Supreme Court and his inability to now do so. Respondent did not raise this defense in its initial pleading, instead choosing to argue that Petitioner's claims were merely unexhausted and that the petition should be dismissed without prejudice for Petitioner to exhaust his claims. See Dkt. 7 (Respondent's Motion to Dismiss). Petitioner asserts that he was unable to file for review in the Michigan Supreme Court because his legal documents were stolen from his prison cell. See Dkt. 1, at 5.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if a state court's decision rests on procedural state law ground that is independent of the federal question and is adequate to support the judgment. See *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, procedural default is not a jurisdictional bar to review of a habeas petition on the merits. See *Trest v. Cain*, 522 U.S. 87, 89 (1997). Additionally, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

The Court deems it more efficient to proceed directly to the merits here because the claims are more easily resolved on that basis and because Respondent arguably waived his

procedural default defense by failing to raise it in his initial pleading. See *Trest v. Cain*, 522 U.S. 87, 89 (1997).

B. Sufficiency of the Evidence

Petitioner first asserts that there was constitutionally insufficient evidence presented at trial to prove beyond a reasonable doubt that he committed any act that caused the death of the victim, that he aided or abetted the person who killed the victim, or that he had an unlawful intent while carrying his firearm.

After reciting the constitutional standard and the elements of the offenses, the Michigan Court of Appeals rejected Petitioner's claim on the merits as follows:

> [D]efendants Thomas and McGee contend that they did not "cause" McKinley's death because theirs was not the bullet that killed her. However, defendants were prosecuted under an aiding and abetting theory, conviction under which required the prosecution to prove that,
>
>> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v. Robinson*, 475 Mich. 1, 6 (2006) (quotation marks and citations omitted).]
>
> It is undisputed that a bullet from someone's gun killed McKinley, thus satisfying the first element of the aiding and abetting theory. The actions of Thomas and McGee described above assisted the commission of the crime by creating or contributing to the tensions that erupted in gunfire, thus satisfying the second element. From these same actions, a jury could reasonably infer that defendants Thomas and McGee acted "in wanton and wilful disregard of

the likelihood that the natural tendency of such behavior is to cause death or great bodily

harm[,]" *Goecke*, 457 Mich. at 464, thus satisfying the third element of aiding and abetting. Accordingly, viewed in a light most favorable to the prosecution, *Ericksen*, 288 Mich. at 196, the evidence was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that defendants Thomas and McGee committed second-degree murder under an aiding and abetting theory.

\*   \*   \*

Viewing the evidence in the light most favorable to the prosecution, *Ericksen*, 288 Mich. App. at 196, and resolving all conflicts in favor of the prosecution, *Unger*, 278 Mich. App. at 222, the evidence is sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that Thomas and McGee assaulted Patton with the intent to murder. It is undisputed that Thomas and McGee assaulted Patton by firing their weapons at him. Witnesses testified that defendants Thomas and McGee fired their weapons in the direction of Patton. Marguerie Johnson said that Patton appeared to be the target because "he was the only one over in that direction and had the music and all that stuff playing." Pamela Jordan testified that, although she did not see who spoke them, the threatening words were spoken "towards" Patton. In addition, the prosecution contends that the number of cartridge cases found at the scene further supports the assault with intent to murder convictions because a jury could reasonably infer that Thomas, McGee, and the other defendants intended to kill when they repeatedly pulled the triggers on their guns. Further, had the assault of Thomas and McGee on Patton been successful, there can be no doubt that the result would have been murder. This evidence, the evidence presented of rival gang affiliations, and the reasonable inferences that may be drawn from all of the evidence, *Ericksen*, 288 Mich. App. at 196, are sufficient to support the jury's conviction of Thomas and McGee for assault with intent to kill.

\*   \*   \*

Viewed in the light most favorable to the prosecution, *Ericksen*, 288 Mich. App. at 196, the evidence is sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that McGee carried a firearm from one location to another, having at the time the intent of using it unlawfully against Clark or his associates. *Mitchell*, 301 Mich. App. at 293. Even if McGee

elected to take a gun to the pre-prom party as protection, once at the pre-prom event he left one location in the parking lot, with the gun, to go to another location in the parking lot and confront Patton and his armed group. McGee stood by Thomas while Thomas flashed his gun and pulled his weapon, McGee or someone else in his group uttered a challenge that concluded with "I got nine rounds for you," and McGee appeared poised to pull his own weapon. He eventually did draw and fire his weapon toward Patton and Clark. That McGee appeared to fire back instead of fire first does not weigh against a finding that, when he approached the Patton/Clark group, he
did so with the fully formed intent of using his weapon unlawfully against them.

*McGee*, 2016 WL 4645822, at *7-11.

This decision did not involve an unreasonable application of the clearly established Supreme Court standard. In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The reviewing court may not "reweigh the evidence, reevaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[E]ven were [the court] to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*; see 28 U.S.C. § 2254(d)(2).

The evidence presented at trial, viewed most favorably to the prosecution, indicated that Petitioner and Thomas were as responsible as the opposing group of men for engaging in the mutual gunfight that left Tonquinisha McKinley dead. Multiple eyewitnesses testified

to seeing the escalating tensions which resulted in the gunfight, including Pamela Jordan, Malik Jordan, Trenika Shivers, Shaquina Reid, Tangela Owens, and Marguerie Johnson.

Witnesses testified that Petitioner and Thomas approached Patton's vehicle, Thomas drew a handgun, and one of the two men said that they had "nine rounds" for Patton. Dkt. 8-8, at 172, 176-77; Dkt. 8-9, at 208. Witnesses testified to then seeing Clark and Bowens fire their pistols towards Petitioner and Thomas. Dkt. 8-9, 46, 71. Petitioner and Thomas returned fire, resulting in a prolonged gunfight in which McKinely was shot in the face and killed. Dkt. 8-7, 46; Dkt. 8-8, 121; Dkt. 8-10, 172; Dkt. 8-11, 83-84. The evidence indicated that five different pistols left 36 spent casings at the scene. Dkt. 8-12, at 161-165, 186.

The evidence viewed through the *Jackson* lens thus established that Petitioner was guilty of second-degree murder under an aiding and abetting theory. Petitioner may not have fired the first shot or the fatal shot, but a rationale fact-finder could conclude beyond a reasonable doubt that by threatening Patton's group, and then participating in the gunfight, Petitioner committed an act that aided in the murder of McKinley and caused her death. Furthermore, the jury could have determined based on the evidence presented that Petitioner either intended to kill someone by engaging in the gunfight or at a minimum that he knew that death or great bodily harm was likely to result from his participation. See *People v. Djordjevic*, 230 Mich. App. 459, 462 (1998) ("Malice may be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily hear.").

Finally, Petitioner's claim that there was insufficient evidence that he had an unlawful intent while carrying a firearm is baseless. The jury could infer beyond a reasonable doubt based on the eyewitness testimony that Petitioner and Thomas intended from the start of the encounter to engage in a gunfight with Patton's group.

The decision of the Michigan Court of Appeals rejecting Petitioner's sufficiency of the evidence claim "was [not] so insupportable as to fall below the threshold of bare rationality." See *Coleman*, 566 U.S. at 656.

C. Great Weight of the Evidence

Petitioner next asserts that he is entitled to a new trial because "the great weight of the evidence" ran contrary to the jury's guilty verdict.

It is well-established that habeas review is not available to correct errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Where the evidence is sufficient as a matter of due process under *Jackson*, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review. A federal habeas court has no power to grant relief on the ground that a state conviction is against the great weight of the evidence. *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). Habeas relief is thus not warranted on such a basis. The claim is not cognizable.

D. Joint Trial

Petitioner's third claim asserts that his trial was improperly tried together with his co-defendants.

Improper joinder does not by itself, however, violate the federal constitution. In *United States v. Lane*, 474 U.S. 438, 446, n. 8 (1986), the Supreme Court suggested that misjoinder could rise "to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Id*. The Sixth Circuit has nevertheless noted that this language in *Lane* is simply dicta and thus not clearly established federal law. See *Mayfield v. Morrow*, 528 F. App'x. 538, 541-42 (6th Cir. 2013). Indeed, joint trials play a vital role in the criminal justice system. *Richardson v. Marsh*, 481 U.S. 200, 209 (1987). Joint trials generally serve the interests of justice by avoiding inconsistent jury verdicts and facilitating the efficiency and fairness of the criminal justice system. *Id*. at 209-10. Other than cases in which a co-defendant's statement is admitted and implicates a defendant, as in *Bruton v. United States*, 391 U.S. 123, 137 (1968), the Supreme Court has left the matter of severance to state law and the trial judge's discretion.

Here, Petitioner does not assert that any statements made by his co-defendants were improperly admitted against him. Instead, Petitioner merely asserts that separate trials were mandated because the defenses presented at the single trial were antagonistic and mutually irreconcilable. That assertion is false. As the Michigan Court of Appeals found:

Notwithstanding defendants' assertions to the contrary, the jury did not have to disbelieve one defendant in order to believe another. *Id.* Michigan State Police scene reconstruction and firearms reports confirmed that there were at least five shooters, and witnesses testified that shots were coming from everywhere. Photographs taken by attendees at the pre-prom party show a number of people around the black Caprice, the area from whence Malik Jordan said the initial shots came. Under these circumstances, Clark's assertion that he did not have a weapon would not necessarily undermine McGee and Thomas's assertions that they fired their guns in self defense. The jury could reasonably believe that Clark did not have a weapon and that McGee fired toward someone near the black Caprice other than Clark or Bowens in self-defense. Therefore, because defendants failed to demonstrate that their defenses were mutually exclusive under *Hana*, the trial court did not abuse its discretion by denying defendants' motions for severance pursuant to MCR 6.121(C). In addition, because defendants did not meet the standard for separate trials, they also did not meet the standard for separate juries. *Hana*, 447 Mich. at 351 (stating that "[t]he use of separate juries is a partial form of severance to be evaluated under the standard, set forth above, applicable to motions for separate trials").

Further, the gravamen of defendants' argument for severance under subsection (D), which permits severance "to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants," was that consolidation would be inherently prejudicial because the defenses of the codefendants were antagonistic and mutually exclusive. However, because subsection (C) did not mandate separate trials, the prosecution intended to call the same witnesses against each defendant, and the record indicates that some witnesses were reluctant to testify at one trial, let alone four, the interests of justice and judicial economy weighed in favor of a single trial.

Defendants having failed to show that separate trials were necessary, reversal is precluded "absent any significant indication on appeal that the requisite prejudice in fact occurred at trial." *Hana*, 447 Mich. at 347. Defendants identify no such prejudice. In fact, the record shows that the trial was devoid of the reciprocal finger pointing predicted by defendants in their motions for separate trials. McGee testified that he recognized the person shooting at him from the direction of the black Caprice, but asserted that it was not Clark, while Trenika Shivers testified that Clark did not have a gun and

that he ran away when the shooting began. Thus, defendants having shown no prejudice arising from their joint trial, reversal is precluded. Id.

*McGee*, 2016 WL 4645822, at *4-5.

As reasonably concluded by the state appellate court, Petitioner failed to demonstrate how he was unfairly prejudiced by the joint trial. He does not point to the existence of any prejudicial "spillover" evidence that would not have been presented at a separate trial. In any event, even the existence of "spillover" prejudice is not sufficient under the court rules or the constitution to warrant severance. Rather, a defendant "must point to specific 'substantial,' 'undue,' or 'compelling' prejudice." *United States v. Fields*, 763 F.3d 443, 457 (6th Cir. 2014). Petitioner has failed to do so here. Accordingly, the claim was reasonably rejected by the Michigan Court of Appeals.

E. Admissibility of Evidence

Petitioner's fourth claim asserts that the trial court erred in allowing admission of overly prejudicial exhibits. Petitioner contends that the trial court erred in allowing introduction into evidence of numerous photographs of various persons displaying gang signs because the prejudicial effect of the evidence outweighed its probative value. Petitioner also asserts that it was error to allow witnesses to give their opinion testimony that the hand signs were gang signs. Finally, he asserts that the trial court erroneously allowed admission of a Facebook posting purportedly made by Thomas admitting responsibility for the victim's death.

The Michigan Court of Appeals reasonably rejected these claims. With respect to the

Facebook evidence, the Court of Appeals stated as follows:

> The improper admission of evidence may deprive a defendant of due process if it "infused the trial with unfairness." *Estelle v. McGuire*, 502 U.S. 62, 75 (1991), quotation marks and citation omitted). The trial court may only admit relevant evidence, MRE 402, and the "requirement of authentication or identification is a condition precedent to admissibility," MRE 901(a). The authentication requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." MRE 901(a). One way of authenticating evidence is by the testimony of a witness with knowledge of the evidence, MRE 901(b)(1). " 'It is axiomatic that proposed evidence…need [not] be free of weakness or doubt. It need only meet the minimum requirements for admissibility.'" *People v. McDade*, 301 Mich. App. 343, 353 (2013), quoting *People v. Berkey*, 437 Mich. 40, 52 (1991).

> In the instant case, Raven Howard had personal experience with Thomas's Facebook page, and testified that the evidence at issue undoubtedly was what the prosecution said it was, i.e., a screen shot from defendant Thomas's Facebook page. MRE 901(b)(1). Although Howard speculated that Thomas's Facebook account could have been hacked and the comment posted by someone posing as Thomas, her speculation was unsupported by even the least hint of evidence. Thus, given Howard's firm identification of the exhibit as a screen shot from Thomas's page based on her personal knowledge of and experience with the page, and the absence of any evidence suggesting that Thomas's page had in fact been hacked, MRE 901(b)(1) was satisfied, and the minimum requirements for admissibility were met. *McDade*, 301 Mich. App. at 353. In addition, the posting was relevant because it referred to the shooting shortly after it happened, MRE 402, and it was not hearsay because it was a party admission, MRE 801(d)(2). Therefore, the trial court did not abuse its discretion by admitting the page and comment into evidence.

*McGee*, 2016 WL 4645822, at *6.

This decision was not contrary to, nor did it involve an unreasonable application of,

clearly established Supreme Court law. Unless a violation of a state's evidentiary rule results

in the denial of fundamental fairness, an issue concerning the admissibility of evidence does

not rise to the level of a constitutional violation. See *Cooper v. Sowders*, 837 F.2d 284, 286

(6th Cir. 1988); *Coy v. Renico*, 414 F. Supp. 2d 744, 756 (E.D. Mich. 2006). As the Sixth

Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable

in habeas proceedings unless they so perniciously affect the prosecution of a criminal case

as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363,

370 (6th Cir. 1994).

Petitioner cannot demonstrate that the admission of the Facebook evidence violated

his federal constitutional rights or rendered his trial fundamentally unfair. The evidence was

primarily offered against co-defendant Thomas. Thomas' Facebook post does not refer to

Petitioner at all. It was not used by the prosecutor to suggest Petitioner's guilt. The allegation

is without merit.

Next, with respect to the gang sign evidence, the Michigan Court of Appeals found

as follows:

> Defendants Thomas and McGee contend that the trial court abused its
> discretion when it overruled objections to the introduction into evidence of
> numerous photographs of various persons displaying alleged gang signs
> because the prejudicial effect of the evidence far outweighed its probative
> value. Defendant Clark contends that Detective Matthew Gerow's testimony
> regarding gang signs was highly prejudicial because the prosecution's
> evidence did not show the type of gang activity that would justify introducing
> evidence from a purported
> expert on gang culture. We disagree.

*   *   *

The prosecutor explained that the evidence at issue went to motive only, and our review of the record confirms that the prosecutor used the photographs to put forward a theory of motive, not to attempt to establish bad character or guilt by association. In addition, because the evidence indicated a connection between gang affiliation and the charged crimes, it paved the way for proper admission of the testimony of Detective Gerow. *People v. Bynum*, 496 Mich. 610, 626-627 (2014) (stating that, where there is fact evidence that a crime is gang related, expert testimony is admissible for an appropriate purpose, such as to elucidate motive). Further, the record shows that, although Detective Gerow testified to the significance of the hand gestures displayed in the photographs, he did not testify that defendants' alleged participation in the pre-prom shooting was behavior "in conformity with characteristic traits commonly associated with gang members." *Bynum*, 496 Mich. at 627. Based on the foregoing, we conclude that the trial court did not abuse its discretion by admitting the photographs at issue because they were relevant to show motive, and the prosecutor and the trial court restricted their use to showing motive. We also conclude that defendant Clark's challenge fails because the prosecution introduced sufficient evidence that the charged crimes were gang-related to allow Detective Gerow to testify about gang signs.

\*    \*    \*

Defendant McGee next contends that the trial court abused its discretion when it overruled objections to the testimony of witnesses about what they saw in the photographs, arguing that such testimony encroached upon the jury's fact-finding role. Again, we disagree.

Lay witnesses may testify in the form of opinions or inferences as long as they are rationally based on the perception of the witness and helpful to the determination of a fact in issue. MRE 701. Here, the prosecuting attorney presented witnesses with photographs of groups of people that included defendants and asked whether those depicted were making gestures with their hands and, if so, whether they knew what the gestures meant. The witnesses' opinions did not go to whether those depicted were members of rival gangs, or to whether gang rivalry was at the root of the shooting, but only to what they saw in front of them and any personal knowledge they may have had with respect to what they saw. Most significantly, the trial court properly instructed the jury on its responsibility to determine the facts of the case, to weigh and decide what each piece of evidence meant and to assess the credibility of all the witnesses, including witnesses from law enforcement. The jurors are

presumed to have followed the court's instructions and, accordingly, to have exercised their proper role as fact-finders, making their own determinations about the significance of the photographs, and accepting or rejecting the witnesses' testimony as they saw fit. *People v. Graves*, 458 Mich. 476, 486 (1998), citing *Hana*, 447 Mich. at 351. For these reasons, we find that the trial court did not abuse its discretion by allowing witnesses to testify to what they saw in the prosecution's photographic evidence.

*McGee*, 2016 WL 4645822, at *6-8.

This decision was reasonable. Evidence of gang affiliation, although prejudicial to a defendant, can be sufficiently probative to warrant admission. *United States v. Williams*, 158 F. App'x. 651, 653-54 (6th Cir. 2005). The Sixth Circuit has held that evidence of gang affiliation is admissible to show participation in a drug conspiracy, *id*., to establish a defendant's opportunity to commit a crime, *United States v. Johnson*, 102 F.3d 214, 221 (6th Cir. 1996), or where the interrelationship between people is central to the case. *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999). Gang evidence is generally inadmissible where there is no connection between the evidence and the charged offense. See *United States v. Newsom*, 452 F.3d 593, 604 (6th Cir. 2006) (holding the danger of unfair prejudice substantially outweighed the probative value of gang tattoo evidence where the charge was felon in possession of a firearm).

Here, the prosecutor asserted that the motive for the shootout was the animosity the two groups of men had for each other due to their affiliation with different areas in Saginaw – one group was from the Sheridan Park neighborhood and the other group belonged to Saginaw's eastside. Evidence regarding the hand signs flashed between the individuals

provided context to the jury for the shooting, and it explained a motive for the sudden violent confrontation. Admission of this evidence did not render Petitioner's trial fundamentally unfair.

Petitioner's evidentiary claims are therefore without merit.

## F. Jury Instructions

Petitioner's final claim challenges the jury instructions regarding mutual combatants, and he argues that the instruction on aiding and abetting was not warranted by the evidence presented at trial.

The Michigan Court of Appeals found that the instruction on mutual combatants was correct as a matter of state law, and that the trial court properly instructed the jury on an aiding and abetting theory of guilt because sufficient evidence supporting that theory of guilt was presented at trial:

> [D]efendant McGee argues that the trial court erred in providing a nonstandard instruction derived from *Riddle* but stressing mutual combat instead of the "sudden, violent, and fierce attack" which both claim the evidence more accurately reflects. We review claims of instructional error de novo, examining the instructions as a whole to determine whether any error occurred. *People v. Kowalski*, 489 Mich. 488, 501 (2011). We review a trial court's determination whether a jury instruction is applicable to the facts of the case for an abuse of discretion. *People v. Dobek*, 274 Mich. App. 58, 82 (2007).

> A mutual combatant is one who is a willing participant in a physical altercation, what at common law was called a "sudden affray" or "chance medley." *Riddle*, 467 Mich. at 120. Mutual combat is not a mere fistfight, but "usually arises when the parties are armed with deadly weapons and mutually agree or intend to fight with them." 40 CJS Homicide § 206. p 658. The

mutual intent and willingness to fight may be manifested by the acts and conduct of the parties leading up to the altercation, and it is immaterial who fires first. *Id.*

We first find that the trial court did not abuse its discretion by granting the prosecutor's request for a mutual combat instruction. As already described, witnesses testified that defendants Thomas and McGee and several companions intentionally confronted Patton, defendant Clark and their associates; one witness testified that they approached "as if they wanted trouble." Both sides were flashing guns and posturing, someone in Thomas's group spoke threatening words to someone in Patton's group, and several people discerned that something bad was about to happen and began to leave the area. A jury could reasonably infer from this testimony that defendants were signaling their mutual intent and willingness to engage in a physical altercation. Therefore, the trial court was required to give the mutual combat instruction requested by the prosecution. *People v. Mills*, 450 Mich. 61, 81 (1995) ("A trial court is required to give a requested instruction, except where the theory is not supported by the evidence.").

\*     \*     \*

Defendant McGee also contends that the trial court abused its discretion by granting the prosecution's request for an instruction on aiding and abetting. However, our finding that the evidence is sufficient to support defendant's conviction for second-degree murder under an
aiding and abetting theory necessarily implies that the instruction was proper. Therefore, defendant's claim that the evidence did not support an instruction on aiding and abetting fails.

*McGee*, 2016 WL 4645822, at *11-12.

Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977); see also *Estelle*, 502 U.S. at 75 (erroneous jury instructions may not serve

as the basis for habeas relief unless they have so infused the trial with unfairness as to deny

due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same). If Petitioner

fails to meet this burden, he fails to show that the jury instructions were contrary to federal

law. *Id.*

With respect to the mutual combat instruction, the Michigan Court of Appeals found

that the instruction was a correct statement of Michigan law. A state court's interpretation

of state law, including one announced on direct appeal of the challenged conviction, binds

a federal court sitting in habeas corpus. *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir.

2013) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)).

With respect to the aiding and abetting instruction, Petitioner does not assert that the

instruction misstated the law. Rather, he asserts that the instruction was not warranted

because the facts of the case did support a conviction on a theory of aiding and abetting.

Again, though, the Michigan Court of Appeals noted that sufficient evidence was presented

at trial to sustain Petitioner's convictions under an aiding and abetting theory. It follows *a

fortiori* that a jury instruction on that theory of guilt was warranted. See *Sims v. Rivard*, 2015

U.S. Dist. LEXIS 173389, *14-15 (E.D. Mich. Dec. 31, 2015).

Accordingly, as none of Petitioner's claims have merit, the petition will be denied.

### IV. Conclusion

Before Petitioner may appeal this Court's dispositive decision, a certificate of

appealability must issue. See 28 U.S.C. ' 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate

of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. ' 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing ' 2254 Cases, Rule 11(a), 28 U.S.C. foll.' 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right with respect to his claims. A reasonable jurists would not debate whether the Court correctly denied relief. Accordingly, a certificate of appealability will be denied.

The Court will, however, grant Petitioner permission to proceed on appeal in forma pauperis because an appeal could be taken in good faith. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002); 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).

## V. Order

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed in forma pauperis on appeal is **GRANTED**.

S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Court

Dated: November 26, 2018